UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARSHAN BETTADAPURA MANJUNATH,<br><br>*Plaintiff*,<br><br>v.<br><br>ALEJANDRO MAYORKAS,<br>Secretary, U.S. Department of Homeland Security, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:22-cv-00488 (ACR)<br><br>Judge Ana C. Reyes |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submitted by Defendants Alejandro Mayorkas, in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"), and Tae D. Johnson, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE") (collectively "Defendants"). Dkt. 11. Plaintiff Darshan Bettadapura Manjunath is a citizen of India and a permanent resident of Canada who previously lived and worked in the United States pursuant to a B-1 business visitor visa and L-1B employment visa. Plaintiff sued Defendants after a U.S. State Department consular officer denied his most recent non-immigrant visa application pursuant to an ICE finding that he was inadmissible.[1]

---

[1] Defendants argue that Plaintiff has not plausibly alleged that ICE—rather than a different government agency—made an inadmissibility determination as it relates to this Plaintiff or his visa application, and that, as a general matter, ICE does not make inadmissibility determinations as it relates to the adjudication of non-immigrant and immigrant visas. Dkt. 11-1 at 17–18. The Court is inclined to agree. The Court is not aware of, and Plaintiff does not cite to, any statutory authority that gives ICE the ability to make inadmissibility determinations. However, the Court does not need to reach this issue because Defendants' Motion to Dismiss can be resolved on other grounds.

1

Defendants moved to dismiss, arguing that the doctrine of consular nonreviewability precludes judicial review, and in the alternative, ICE should be dismissed from the case because it is not an appropriate defendant. For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss (Dkt. 11).

## I. BACKGROUND

The pertinent factual allegations in this case are as follows.[2] Plaintiff worked in the United States on an L-1B employment visa from April 2012 to September 2014 as an engineer for Tech Mahindra, an India-based information technology and business outsourcing provider. Dkt. 1 at ¶23. In October 2014, Plaintiff returned to India and worked as a technical manager at NetCracker Technology India Ltd. ("NetCracker"), a communications technical support company. *Id.* at ¶24. In April 2015, Plaintiff applied for a B-1 business visitor visa, at his employer's request, so that he could travel to the United States for work. *Id.* at ¶25. Plaintiff applied for the visa in order to travel to NetCracker's U.S. headquarters and certain client offices, including a client site in Texas, the following month so that he would be able to establish project parameters to be implemented by his team of developers in India. *Id.* On April 21, 2015, a U.S. consular officer in Chennai, India issued Plaintiff a 10-year, multi-entry B1/B2 visa. *Id.* However, NetCracker canceled Plaintiff's trip and he did not visit the United States in May 2015. *Id.* at ¶27.

In October 2015, Plaintiff traveled to Ridgeland, Mississippi to work on a project with one of NetCracker's clients, C Spire/Telepak. *Id.* at ¶¶28–29. The Customs and Border

---

[2] In considering a motion to dismiss for failure to state a claim, as is the case here, a court "accept[s] the well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir.), *cert. denied sub nom. Kareem v. Burns*, 142 S. Ct. 486 (2021) (quotations omitted). Accordingly, the following facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this Motion.

Protection ("CBP") inspector at the Dallas-Fort Worth Airport asked Plaintiff what his final destination was, and Plaintiff replied that he was travelling to C Spire/Telepak in Mississippi. *Id.* at ¶29. Plaintiff spent three weeks at the client site in the United States and returned to India on November 7, 2015. *Id.* at ¶¶30–31. In India, Plaintiff led a team in developing the project for C Spire/Telepak. *Id.* at ¶31. NetCracker asked Plaintiff to apply for an L-1B employment visa to return to the United States and work on-site at C Spire/Telepak. *Id.* at ¶32. In February 2016, NetCracker supported Plaintiff's L-1B application at the U.S. Consulate General in Chennai, India. *Id.* at ¶33. On February 29, 2016, the Consulate General issued the L-1B work visa to Plaintiff. *Id.* The visa was valid through February 28, 2019, however, it was restricted by an underlying petition expiration date of February 15, 2017. *Id.* On March 13, 2016, Plaintiff returned to the United States and began to work on-site at C Spire/Telepak. *Id.* at ¶34. After completing his project, Plaintiff returned to India on April 30, 2016. *Id.* at ¶35.

On May 22, 2016, Plaintiff again traveled on his L-1B visa to the United States, this time to Alaska, to work on-site for a new project for one of NetCracker's clients, GCI. *Id.* at ¶36. He left the United States on December 6, 2016. *Id.* at ¶38.

Soon thereafter, Plaintiff applied for a new L-1B employment visa at the U.S. Consulate General in Vancouver, Canada. *Id.* In his interview, Plaintiff was asked about NetCracker, his activities at C Spire/Telepak, and his NetCracker colleague, Jayaram Amudala, who had also traveled to C Spire/Telepak's facilities. *Id.* On January 5, 2017, Plaintiff learned that he was permanently barred from the United States under 8 U.S.C. §1182(a)(6)(C)(i),[3] his application to return to the United States for NetCracker and GCI was denied, and he was eligible for a waiver.

---

[3] Pursuant to this provision of the Immigration and Nationality Act, "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. §1182(a)(6)(C)(i).

3

*Id.* When Plaintiff wrote to the U.S. Consulate General in Vancouver to ask about his inadmissibility determination, the relevant office replied that ICE made Plaintiff's inadmissibility determination and that he would need to apply for an eligibility waiver. *Id.* at ¶40. Plaintiff did not apply for an eligibility waiver. *Id.* at ¶38. Plaintiff also submitted a Freedom of Information Act ("FOIA") request and learned that ICE had launched an investigation into NetCracker for "abuse of B visa – Visa fraud and unlawful employment of unauthorized aliens." *Id.* at ¶41. Plaintiff's FOIA request also returned the following entries related to him:

> Darshan BETTADAPURA MANJUNATH
> D/PO: 10/25/1985, India
>
> BETTADAPURA MANJUNATH applied for a B-1 visa on 04/09/2015, indicating that he was a Technical Manager for NETCRACKER and was destined to the main office in Waltham, MA for 3 weeks of meetings or training. He listed his intended address of stay in the U.S. as 99 Charlsbank Way, Waltham, MA and the POC listed on the application was [REDACTED] BETTADAPURA MANJUNATH was issued a B-1/B-2 visa on 04/21/2015. On 10/18/2015, BETTADAPURA MANJUNATH was admitted to the U.S. as a B-1 nonimmigrant at Dallas-Fort Worth International Airport destined to Ridgeland, MS. Telepak records indicate that he was onsite at the Telepak office every weekday (not weekends) between 10/21/2015 and 11/06/2015. During the 05/06/2016 interview of [REDACTED] by HSI and CBP [REDACTED] gave BETTADAPURA MANJUNATH's name as another NETCRACKER employee who had worked in the U.S. using a B-1/B-2 visa.
>
> 24) Darshan Manjunath a) May currently be on site at Telepak. He is a NetCracker technical manager and works to ensure that NetCracker had the technical resources and equipment on site to complete the project. He assisted with the EMS platform and assisted with transporting data inside the Telepak network.

*Id.* at ¶41. In addition, Plaintiff learned that CBP believed that he was unlawfully engaged in work during his October 2015 visit on a B-1 visa to C Spire/Telepak. *Id.* at ¶45.

In March 2021, Plaintiff's counsel requested that ICE rescind its finding of inadmissibility. *Id.* at ¶46. By letter dated April 12, 2021, ICE's Executive Deputy Principal Legal Advisor responded that he reviewed Plaintiff's request and referred him to the U.S.

4

Department of State.  *Id.* at ¶47; Dkt. 1-1 at 4.  He explained: "ICE does not adjudicate visa applications; DOS alone makes final determinations of visa eligibility."  Dkt. 1-1 at 4.

On February 24, 2022, Plaintiff filed the instant action seeking declaratory and injunctive relief pursuant to the Administrative Procedure Act ("APA") and Declaratory Judgment Act. Dkt. 1.  Plaintiff requests that the Court declare that ICE's inadmissibility determination is unlawful, ICE's failure to correct its inadmissibility determination is in bad faith, and Plaintiff is not inadmissible to the United States.  *Id.*  Plaintiff also requests that the Court order ICE to withdraw its inadmissibility determination against Plaintiff and order that the determination be purged from all databases used by Defendants and/or the Department of State to adjudicate the admissibility of Plaintiff to the United States.  *Id.*

## II.  LEGAL STANDARD

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss under Rule 12(b)(6), courts must accept as true all of the plaintiff's allegations of fact, and must also "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotations omitted).  "However, the court need not accept inferences ... [that] are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III.  ANALYSIS

Defendants argue that Plaintiff's challenge to ICE's inadmissibility determination should be dismissed because it is an attack on the denial of Plaintiff's non-immigrant visa, and is thus barred by the doctrine of consular nonreviewability.  The Court agrees.  Accordingly, Plaintiff's claims are not reviewable and must be dismissed.

The doctrine of consular nonreviewability "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  "This rule applies even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error."  *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009) (quoting *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002)).  The doctrine also applies "where a plaintiff attempts to circumvent the doctrine by claiming [that] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision."  *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010).

Here, Plaintiff attempts to circumvent the doctrine of consular nonreviewability by arguing that he does not seek review of the visa decision, but instead challenges the inadmissibility determination that is the basis for the unfavorable visa decision.  However, Plaintiff's challenge to the inadmissibility determination "cannot be divorced from his attack on the consular officer's decision to deny [his] visa."  *Thatikonda v. U.S. Dep't of Homeland Sec.*, 1:21-cv-1564, 2022 WL 425013, at *6 (D.D.C. Feb. 11, 2022).  *Thatikonda v. U.S. Department of Homeland Security* is instructive.  There, the plaintiff sued DHS and U.S. Citizenship and

Immigration Services ("USCIS") after a State Department consular officer refused to issue her a visa based on USCIS's determination of inadmissibility. *Id.* at \*2. This Court explained that, while Thatikonda claimed that she was challenging USCIS's determination, rather than the consular officer's decision to deny her visa, her "challenge to the USCIS finding cannot be divorced from her attack on the consular officer's decision to deny her visa." *Id.* at \*6. Accordingly, Thatikonda's suit was barred by the doctrine of consular nonreviewability. For the same reasons, the Court must dismiss Plaintiff's claims.[4]

While the D.C. Circuit recognizes "two narrow circumstances" where consular decisions are subject to review,[5] neither exception applies here, nor does Plaintiff argue that either exception applies. *See Thatikonda*, 2022 WL 425013, at \*6. Plaintiff does however imply that the APA, the Mandamus Act, and the Declaratory Judgment Act authorize judicial review of this action. Not so. *See Saavedra Bruno*, 197 F.3d at 1158 (holding that the APA provides no basis for challenging consular decisions); *Carter v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-422, 2021 WL 6062655, at \*5 (D.D.C. Dec. 22, 2021) (collecting cases and explaining that the Declaratory Judgment Act and Mandamus Act provide no exception to consular nonreviewability).

---

[4] Plaintiff's argument that the reasoning in *Thatikonda* is not persuasive because it involves a challenge to a USCIS determination (rather than an ICE determination) is of no import. Dkt. 13 at 14–15. Both *Thatikonda* and the instant case involve an "indirect attack on [a] visa denial" based on an inadmissibility determination made by an agency sub-component of DHS. *Thatikonda*, 2022 WL 425013, at \*6.

[5] "First, an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights . . . The second exception exists only if a statute expressly authorizes judicial review of the consular officer's action." *Thatikonda*, 2022 WL 425013, at \*6 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024–25 (D.C. Cir. 2021)) (internal quotation marks omitted).

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 11) is GRANTED.

Date: April 10, 2023

_____
ANA C. REYES
United States District Judge